ROME MILLER, APPELLEE, v. JAMES B. KITCHEN ET AL., APPELLANTS.

FILED APRIL 19, 1905. No. 13,693.

1. Corporations: RECEIVERS. A receiver will not readily be appointed in a stockholder's suit for mismanagement of corporate affairs where neither the corporation nor the corporate officers are insolvent and the corporation is a going concern profitably conducted.

2. **Equity.** Where it is within the ordinary powers of a court of
equity to grant sufficient relief to a complaining minority stock-
holder who alleges mismanagement by corporate officers, a re-
ceiver will ·not be appointed.

APPEAL from the district court for Douglas county:
IRVING F. BAXTER, JUDGE. *Reversed.*

*John C. Cowin* and *George E. Pritchett,* for appellants.

*Hall & McCulloch* and *J. W. Woodrough, contra.*

LETTON, C.

This is an appeal from an interlocutory decree appoint-
ing a receiver in a stockholder's suit. The plaintiff, Rome
Miller, is a stockholder in the Kitchen Brothers Hotel
Company, and brings the action against James B. Kitchen,
as president, and the corporation itself, alleging fraud and
mismanagement on the part of the officers of the corpora-
tion and praying for an accounting and a receiver, but not
asking to wind up the corporate affairs. The findings of
fact upon which the receiver was appointed are substan-
tially, though much abridged, as follows: Kitchen Brothers
Hotel Company is the owner of certain hotel property in
the city of Omaha known as the Paxton Hotel, with a
capital stock of 500 shares of a par value of $1,000 each.
In June, 1890, all of the stock of said corporation was
owned by the defendant, James B. Kitchen, and his
brother, Richard Kitchen, each owning 250 shares. Richard
Kitchen died on the 29th day of June, 1890. Part of his
shares of stock were bequeathed to various relatives and
legatees and the balance of the shares, being 157 in num-
ber, were sold under a decree of the probate court to one
Perkins, who sold the same on the 3d day of June, 1901, to
the plaintiff, Rome Miller. Elizabeth ·Whalen, who inter-
vened in the action to participate in the relief granted
plaintiff, is the owner of five shares of stock acquired
under the will of Richard Kitchen. The defendant, James
B. Kitchen, owns 293½ shares of stock and ten other per-

sons own shares of stock varying in number from one to 13½. Ever since the death of Richard Kitchen, the defendant, James B. Kitchen, has had the absolute control and management of the affairs of the corporation, and has caused to be selected as directors, George E. Pritchett, his attorney, J. J. Points, his bookkeeper, Ralph Kitchen, his nephew, and Elizabeth Kitchen, his wife, having given to each of said parties, except Ralph Kitchen, a share of stock to qualify them to act as directors. The court found further that the defendant James B. Kitchen has controlled the affairs of the company for his own personal interest without any regard whatever for the interests of the other stockholders; that no stockholders' meetings have been called; that he has executed leases of his own property to the corporation for large and extravagant rental; that he has carelessly permitted the books of the company to be lost or destroyed, and has kept the books in such a manner that they fail to show the correct amount of receipts and disbursements of said company; that he has received large sums of money for which he has not accounted, and has caused to be conveyed to himself certain real estate of the company for a grossly inadequate consideration; that he caused to be sold to the company certain premises belonging to him individually, adjoining the hotel upon the west, at an excessive price, and executed a mortgage to himself as an individual upon the hotel property to secure deferred payments upon the same; that for many years the profits of the business have been large and that the defendant has failed to satisfactorily account therefor. As a conclusion the court finds that ever since the death of Richard Kitchen, the defendant James B. Kitchen has converted the properties and profits of the corporation to his individual use to the injury and loss of all the other stockholders, and finds that if he is permitted to continue in the control and possession of the assets and affairs of the corporation great and irreparable injury to the rights of the other stockholders will ensue.

The appellants have not pointed out specifically wherein

the findings of the district court are not supported by the facts in evidence. They say that the evidence fails to establish the allegations of the petition in regard to misconduct of the defendant Kitchen. They further contend that since the only complaints are that an excessive salary was paid to the president, that too much was paid for the property leased or purchased by the corporation, and that Kitchen has possession of funds belonging to the company, there is no necessity for the appointment of a receiver.

On the other hand, appellee's contention is that since there has been a continuous course of fraud and mismanagement as respects the stockholders carried on by the defendant for a long period of years, and since he has concealed or destroyed the books of the corporation and covered up the assets, he will continue in this wrongful course of action if permitted to retain the management and control of the property, and that hence it should be taken from him and put into a receiver's hands.

While the enormous growth and extension of corporate affairs within the last quarter of a century has largely augmented the volume of actions in which the appointment of a receiver is prayed as regarding corporate property and corporate affairs, and while some courts have in the past been inclined to go to an extreme length in asserting the power of a court of chancery over the direction and management of the affairs of corporations, still the tendency of the more modern decisions is to return to the safe and settled principles established in the past, and to refuse to interfere by such appointment unless absolutely necessary to do complete justice. "A receiver will not readily be appointed in a suit by a stockholder to remedy the frauds or *ultra vires* acts of the directors or of the corporation itself. The court will not injure the whole enterprise in order to correct a wrong done to the enterprise. Other remedies will be applied." 3 Cook, Corporations (5th ed.), sec. 863. The officers of a corporation are trustees for the benefit of its stockholders. To them has been committed the direction of the corporate affairs. Where

fraud or mismanagement by them is charged, it is only
where the ordinary remedies are inadequate, or where the
assets of the corporation are liable to be squandered or dis-
sipated, or the business of the corporation injured or de-
stroyed, or for the purpose of winding up the affairs of the
corporation that a court will be justified in taking from
the owners thereof the management and direction of the
corporate affairs, and assuming such management and di-
rection itself through the hands of its receiver.    Beach,
Receivers (Alderson's ed.), sec. 424.

It appears from the evidence that the Kitchen Brothers
Hotel Company is the owner and is engaged in the man-
agement of the Paxton Hotel in the city of Omaha, which
is a large and valuable property; that this business has
been successfully and profitably conducted ever since the
death of Richard Kitchen and that it is at this time a
profitable and going concern.    No complaint is made but
that the highest skill and most profitable management
have been exercised so far as the hotel business itself is con-
cerned.    The property has been kept in good repair, the
business has been profitable, and there is no complaint that
the good will is suffering or that property of the corpora-
tion used in the business itself is being lost or destroyed.
No contention is made but that the defendant Kitchen is
amply able to respond financially to any judgment or de-
cree which may be rendered against him in this action, and
no claim is made in the petition that either the corporation
itself or the defendant Kitchen are insolvent.    The ques-
tion then presented for our consideration is whether, in
order to afford the plaintiff complete relief from the
wrongs which he charges that he, in common with other
stockholders, has suffered, it is necessary to take the man-
agement and control of the business away from the cor-
poration itself and vest it in the hands of a receiver.

Assuming that the findings of the district court as to the
actions of the defendant as an officer of the corporation
show the actual condition of affairs, and taking into con-
sideration likewise the fact that the business and property

of the corporation appear to be in a flourishing condition, and that the officers of the corporation performed their duties and administered their trust properly, so far as concern the preservation and conduct of the business and except with reference to the stockholders, do these facts warrant the appointment of a receiver? If the defendant Kitchen as an officer of the corporation has obtained property of the corporation without giving a fair equivalent therefor the court has power to order him to reconvey. If the transaction by which he sold the adjoining property belonging to himself to the corporation, and executed a mortgage of $66,000 in part payment therefor was fraudulently done—as to which the evidence is conflicting—the court may order the conveyance of the property set aside and the mortgage canceled. If he has paid to himself an excessive salary, the court has power to make him account for whatever the excess may be over a just and fair remuneration for his services. If he has absorbed the profits of the company, the court by decree in this case may make him disgorge; and if he has failed to account, an accounting may be required and enforced. These powers of the court afford ample remedy for all the wrongs the plaintiff has suffered heretofore; but it further appears that the books of the corporation, if kept at all, have been kept in a very careless and unbusinesslike method, a number of volumes apparently have been lost or mislaid by the defendant, and the system or lack of system used has been such as to fail to properly keep a true record of the business. So far as appears, however, the defendant at this time is keeping a proper account of the business, and, even if he were not doing so, the court has power to compel him to keep an accurate account of the corporate business; to compel him to allow the plaintiff and all other stockholders reasonable access to the books, and to furnish them full information as to the conduct of the business. The general principles in regard to the appointment of receivers of corporations have been clearly and succinctly stated by Mr. High as follows: "And courts of equity will not, ordinarily, by virtue

of their general equitable jurisdiction, or of their visitatorial powers over corporate bodies, sequestrate the effects of the corporation, or take the management of its affairs from the hands of its own officers and intrust it to the control of a receiver of the court, upon the application either of creditors or shareholders. And while equity may properly compel officers of corporations to account for any breach of trust in their official capacity, yet in the absence of statutes extending its jurisdiction, it will usually decline to assume control over the management of the affairs of a corporation, upon a bill filed by a stockholder alleging fraud, mismanagement and collusion on the part of the corporate authorities, since such interference would necessarily result in the dissolution of the corporation, and the court would thus accomplish indirectly what it has no power to do directly. · The remedial power exercised by courts of equity, in such·cases, ordinarily extends no further than the granting of an injunction against any special misconduct on the part of the corporate officers; and although the facts shown may be sufficient foundation for such an injunction, the court will not enlarge its jurisdiction by taking the affairs of the corporation out of the management of its own officers, and placing them in the hands of a receiver." High, Receivers, sec. 288. See note to *Cameron v. Groveland Improvement Co.*, 72 Am. St. Rep. 56. In line with these principles, this court has said in *Provident Life & Trust Co. v. Keniston*, 53 Neb. 86:

"An application for a receiver is addressed to the sound discretion of the trial court, and while by the statutes and by force of adjudicated cases the exercise of that discretion is to a certain extent governed by general rules, still in each case the particular circumstances must be regarded, and if, considering all the circumstances, 'the case be such that a greater injury would ensue from the appointment of a receiver than from leaving the property in the hands now holding it, or if any other considerations of propriety or conveniency render the appointment of a

receiver improper or inexpedient, none will be appointed.'" *Vose v. Reed,* 1 Woods (C. C.), 657.

We have heretofore in *Ponca Mill Co. v. Mikesell,* 55 Neb. 98, and in *Vila v. Grand Island Electric Light, Ice & Cold Storage Co.,* 68 Neb. 222, and *Smiley v. Sioux Beet Syrup Co.,* 71 Neb. 586, considered generally the duties of a court with reference to the appointment of receivers for corporate property, and have clearly indicated the propriety of noninterference with the management of corporate affairs unless absolutely necessary for the protection of the property interests of the stockholders. In the instant case, we are of the opinion that whatever wrongs have been suffered by the plaintiff and the other stockholders of the hotel company in the past by reason of the wrongful acts of the defendant Kitchen may be as fully remedied without the appointment of a receiver as they can be if one were appointed; that on the other hand, to take the management and control of the hotel property out of the hands of the persons who have apparently managed it successfully for many years, and to try the experiment of placing it in the hands of an officer of the court, would in all probability be highly detrimental to the business. This is the more probable, since it is a matter of common knowledge that the success or failure of a hotel often depends largely upon the personal qualities and characteristics of the person or persons who may be in the control and management of the business. The personal equation often cuts a large and important figure in a business of such character.

If a receiver were appointed as the plaintiff prays, for how long should his appointment continue? The petition does not ask for a dissolution of the corporation or the winding up of its affairs, and the only purpose for which the appointment seems to be prayed is that the conduct of the business may be taken out of the hands of the officers of the corporation who may be elected by a majority of the stockholders and kept indefinitely in the hands of the court. Since the defendant holds a majority

of the stock he has the power to elect such officers as he may desire to conduct the corporate affairs. This is a right and privilege given him by law, and so long as these officers honestly and faithfully carry out their trust, neither the plaintiff nor any other stockholder has a right to complain. If a receiver is appointed there must be an end to the receivership sometime, and whenever that time should come the property would inevitably go into the hands of officers selected by the majority stockholders, and the plaintiff would be in no better condition then than now so far as control of the management is concerned. The case is not one where the corporate assets or property is being lost or destroyed. If the officers of the corporation are at this time conducting the business properly and keeping proper books of account so that the plaintiff and other stockholders may be apprised of the condition of the business, the plaintiff is in all respects as well off as he would be if the receiver were appointed. If necessary, the court may restrain the making of any deeds or conveyances affecting the property while the action is pending. If the court should find upon the trial of the main case that the defendant is indebted to the corporation and require him to pay to the corporation any amount of money, it may by proper orders compel the distribution of the same or any part of it among the stockholders by way of dividend, as justice might require, and may by proper orders control the action of the corporate officers with reference thereto. As has been said, there is no general rule applying to all cases wherein the appointment of a receiver is prayed for. Such relief is only ancillary to the purposes of the main suit, and unless it is necessary to the attainment of the principal object of the controversy it will not be granted. In the instant case, the plaintiff, so far as now appears, can be granted all the relief for which he prays without taking the property into the hands of the court by the appointment of a receiver, and it is not clear but that the interest of the plaintiff, as well as of all the other stockholders in the corporation, would be in-

jured by the court wresting from the legally elected officers of the corporation the power of control of the corporate affairs granted them by law. The power to appoint a receiver may be exercised as the occasion for that relief arises in the progress of a suit, and if that drastic remedy is needed in the future conduct of the corporate affairs of the defendant corporation, it is within the power of the court to apply it.

We are of the opinion that the facts shown did not require the appointment of a receiver, and that the judgment of the district court in that regard should be reversed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

REVERSED.